OPINION OF THE COURT
Meyer, J.
 A Trial Judge who has rendered a guilty verdict after a nonjury trial has neither inherent power nor statutory authority to reconsider his factual determination. Although he may correct clerical or ministerial errors, he is without authority to reassess the facts and change a guilty verdict to not guilty. The order of the Appellate Division should, therefore, be reversed, defendant’s motion to set aside the verdict denied and the case should be remitted to Oneida County Court for sentencing.
*534 I
On the afternoon of April 4, 1981, two Utica police officers in an unmarked patrol car saw James Spann apparently trying to use the police call phone. Spann shouted to the officers that defendant, who was standing across the street, had a gun and was going to fire. Although the officers called to defendant to halt, he ran to a car, got in and drové away. The officers pursued and after about three blocks saw a handgun being thrown from the driver’s window of defendant’s car. One of the officers alighted to retrieve the weapon. The other then resumed the chase for several minutes, until defendant voluntarily stopped his car and was arrested.
Indicted for criminal possession of a weapon in the third degree, defendant waived his right to a jury and was tried before a Judge of the Oneida County Court. Conflicting evidence was offered during trial by Spann, defendant, and Theresa Warren, a witness called by defendant. Spann testified that he intended to ask defendant whether there was an affair going on between defendant and Spann’s wife, but defendant slapped him across the face and pulled out a small handgun before Spann had a chance to ask any question. Spann then removed a knife from his own pocket and ran to the call box to telephone the police. Defendant, on the other hand, testified that Spann kept badgering and grabbing him until he hit Spann to get him to stop. At that moment, defendant felt something fall and strike his left foot, which turned out to be the gun. After picking up the weapon, defendant saw Spann talking to the police and pointing at him. Defendant testified that this caused him to panic, drive off and throw the gun out of the car window. Thus, the theory of the defense was that defendant was justified in picking up the gun for self-protection and that his possession before he threw it away was temporary and innocent.
Although there was testimony that a number of people were present during the incident, only one, Ms. Warren, called by defendant, testified at trial. Her testimony was, however, so equivocal as not to be helpful in resolving whether defendant had drawn the gun from his pocket or merely retrieved it from the ground. Aside from Spann and *535 the two arresting officers, the only prosecution witness was a police department ballistics expert who testified that the gun was operable with the bullets that were found in it when it was retrieved.
After summations by both counsel, the County Judge announced, without elaboration, that “The verdict of this Court is that the Defendant is guilty of criminal possession of a weapon in the third degree”, and fixed a date for sentencing. On the sentencing day, however, defendant’s counsel moved to set aside the verdict on the grounds that guilt had not been proven beyond a reasonable doubt and that the verdict had been rendered without due deliberation. In response, the prosecutor argued that there was adequate deliberation and that the evidence was legally sufficient and that, therefore, CPL 330.30 provided no basis for setting aside the verdict.
The Trial Judge granted the motion, set aside the verdict and dismissed the indictment. His bases for doing so were that upon review of the evidence he believed that Spann’s testimony did not prove beyond a reasonable doubt the defendant’s illegal possession of the pistol, and that although there were other persons present at the scene who might have established beyond a reasonable doubt which version of the facts — defendant’s or Spann’s — was true, no reason had been given why those persons were not called as witnesses. The order entered in furtherance of that decision recited that defendant’s motion had been made under CPL 330.30.
On the People’s appeal to the Appellate Division from the dismissal, that court made no mention of CPL 330.30, but affirmed nevertheless, holding that the Trial Judge had “inherent power * * * to correct any errors in its own rulings, provided such correction is made prior to the termination of the proceedings.” On their further appeal by leave of a Judge of this court, the People argue that the Trial Judge had neither statutory nor inherent authority to set aside the verdict and defendant, seeking to sustain the order of the courts below, contends that the court, having announced a verdict immediately, without statement of reasoning, failed properly to “consider the case” as required by CPL 320.20 (subd 3, par [d]). We reverse.
*536 II
CPL 330.30 specifies the grounds upon which a Trial Judge may set aside or modify a guilty verdict before sentence. The only ground arguably relevant to the present case is that stated in subdivision 1: “Any ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court” (emphasis supplied). The power granted a Trial Judge is, thus, far more limited than that of an intermediate appellate court, which is authorized to determine not only questions of law but issues of fact (CPL 470.15, subds 1, 3), to reverse or modify a judgment when the verdict is against the weight of the evidence (CPL 470.15, subd 5), and to reverse “[a]s a matter of discretion in the interest of justice” (CPL 470.15, subds 3, 6). Although the interest of justice power permits an intermediate appellate court to vacate a conviction as to which reversal is not warranted on the law or the facts when “there is a grave risk that an innocent man has been convicted” (People v Kidd, 76 AD2d 665, 668, mot for lv to app dsmd 51 NY2d 882; accord People v Crudup, 100 AD2d 938, 939; People v Lawrence, 111 Misc 2d 1027,1033), Trial Judges have no such power. Nor are they authorized to set aside a verdict as against the weight of the evidence. Such power existed under the Code of Criminal Procedure which permitted the Trial Judge to grant a new trial when the verdict was “clearly against evidence” (Code Crim Pro, § 465, subd 6; see People v Ramos, 33 AD2d 344), but that power was not carried forward into the Criminal Procedure Law.
The power granted a Trial Judge by CPL 330.30 (subd 1) to set aside a verdict when reversal as a matter of law by an appellate court would be required is, as concerns proof of guilt, therefore, normally limited to a determination that the trial evidence was not legally sufficient to establish the defendant’s guilt of an offense of which he was convicted (CPL 470.15, subd 4, par [b]). Additionally, even though the evidence meets the statutory test for legal sufficiency (CPL 70.10, subd l),[1] there are instances in *537 which an appellate court can decide that the evidence is inadequate as a matter of law to prove the defendant’s guilt beyond a reasonable doubt (see, e.g., People v Reed, 40 NY2d 204, 206-209 [testimony of sole prosecution witness essentially exculpatory]). Thus, Carter’s conviction could have been set aside under CPL 330.30 only if based upon insufficient evidence or evidence which as a matter of law was inadequate to prove guilt beyond a reasonable doubt.
Review of the instant record reveals no such defect in the proof. James Spann’s testimony that defendant drew the gun from his pocket, when coupled with the police testimony that the gun was loaded and operable, was sufficient, if accepted as true, to establish every element of the crime with which defendant was charged (see CPL 70.10, subd 1). There was nothing so clearly exculpatory or so inherently contradictory or unbelievable in the People’s proof that it could be regarded as insufficient as a matter of law (see People v Reed, 40 NY2d 204). And while there was testimony that others were on the sidewalk where the incident occurred, there is nothing in this record, as there was in Reed (40 NY2d, at pp 206, 209), to establish that any of them could bear witness to where the gun came from. CPL 330.30, therefore, furnished no basis for setting aside the verdict.
Ill
Although the Appellate Division apparently agreed that there was no statutory predicate for the action taken by the County Judge, it sustained his action as an exercise of inherent power to change the verdict. If Trial Judges possess inherent power of sufficient scope to sustain the Trial Judge’s order, that order is presumably as unreviewable as any other dismissal after a not guilty verdict in a criminal case (see, generally, People v Sabella, 35 NY2d 158). But if the Trial Judge was without such power, this court may take appropriate action without violating defendant’s double jeopardy rights because “there is available a determination of guilt which without more may be reinstated in the event of a reversal and remand” (People v Brown, 40 NY2d 381, 391, cert den 433 US 913).
*538 It is settled that in criminal as well as in civil cases courts possess “‘inherent power to correct their records, where the correction relates to mistakes, or errors, which may be termed clerical in their nature, or where it is made in order to conform the record to the truth’ ” (People v Minaya, 54 NY2d 360, 364, quoting from Bohlen v Metropolitan El. Ry. Co., 121 NY 546, 550-551). But while a Trial Judge may correct a formal error in a verdict, such as an inaccurate statement of the verdict intended on a particular count or an incorrect recording of the verdict in the minute book (cf. People u Minaya, supra), the power does not extend to the alteration of a guilty verdict to one of not guilty based on a reassessment of the facts, for that is a correction of substance, not a mere ministerial act (see Corr v Hoffman, 256 NY 254, 268; Herpe v Herpe, 225 NY 323, 327; People v Pastore, 46 AD2d 870).
The cases cited by the Appellate Division in support of its contrary conclusion all predated enactment of the Criminal Procedure Law.[2] The Code of Criminal Procedure contained no definition of conviction, and the case law decided under it, while recognizing the equivocal meaning of the word, generally held that conviction did not occur until after adjudication of guilt and the imposition of sentence (Matter of Keogh v Wagner, 15 NY2d 569, affg 20 AD2d 380; Matter of Lewis v Carter, 220 NY 8, 16). Under the Criminal Procedure Law, however, the verdict clearly marks the termination of the trial (CPL 1.20, subds 11,12), and “conviction” occurs upon the entry of a verdict of guilty, though sentence and judgment be later imposed and entered (CPL 1.20, subds 13,14,15; see Matter of Gunning v Codd, 49 NY2d 495).
The definitions in CPL 1.20 are applicable to jury and nonjury trials alike (CPL 320.20, subd 4). That fact and the facts that CPL 320.20 (subds 2, 3, par [d]) require the court trying a nonjury case to “render a verdict,” and that CPL 330.30, which details the power of that court “after rendition of a verdict of guilty and before sentence,” contains no *539 authorization for a change in the factual determination embodied in the verdict, strongly suggests that the Legislature did not intend a Judge trying a nonjury case to have the power to do so. Additional evidence of legislative intent, if such be needed, exists in its refusal to carry forward into the Criminal Procedure Law the previously recognized power of the Trial Judge to set aside a verdict as against the weight of the evidence. Were we to recognize such an inherent power in a Trial Judge in nonjury cases, that would mean that although he is in no better position to weigh the evidence in one case than in the other, he would be empowered to do so in nonjury cases but not after a jury verdict. We perceive no reason for according less finality to the verdict of a Trial Judge when sitting as “the exclusive trier of all issues of fact” (CPL 320.20, subd 2) than to a jury verdict.[3]
IV
Nor was the original verdict defective because the court failed to comply with the requirement to “consider the case” (CPL 320.20, subd 3, par [d]). The record indicates that the entire trial of this matter took a total of approximately four hours on two consecutive days. Virtually the only issue presented by the evidence, as the court later noted, was whether to believe the defendant’s testimony or that of James Spann, and that credibility question was adequately highlighted by the attorneys’ summations, coming as they did immediately after the presentation of evidence. Moreover, the Trial Judge is no more required to state the factual basis for his verdict than is a jury (People v Shufford, 97 AD2d 777).
The Judge’s subsequent concern about other possible witnesses amounted to no more than speculation about possible evidence which defense counsel had not shown to exist and which, in any event, could well have been as equivocal as the testimony of Ms. Warren. In short, the guilty verdict rendered by the Trial Judge was not marked by any error of law.
*540 Accordingly, the order of the Appellate Division should be reversed, defendant’s motion to set aside the verdict denied, and the case remitted to Oneida County Court for sentencing.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Simons and Kaye concur.
Order reversed, etc.

. “ ‘Legally sufficient evidence’ means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commis *537 sion thereof; except that such evidence is not legally sufficient when corroboration required by law is absent.”

. All except Matter of O’Connor v Weinfeld (47 Misc 2d 228) are distinguishable on the further ground that they concerned motions to dismiss an indictment or for an order of observation of an incompetent defendant, rather than the rendition of a verdict. The theory of Matter of O’Connor, that the trial did not end until pronouncement of sentence, is answered in the text of this opinion.

. Such benefit as arises from the collegial consideration in which the members of a jxury engage is balanced by the Judge’s training and experience in considering evidence and making factual determinations and, in any event, is an insufficient reason for importing the uncertainty that would be introduced by the recognition of an inherent power to change the substance of a verdict once rendered.