

**NUMBER 13-06-428-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**THE STATE OF TEXAS,**                                                                 **Appellant,**

**v.**

**ABRAHAM CHAVEZ GUERRERO,**                                           **Appellee.**

---

**On appeal from the 117th District Court of Nueces County, Texas.**

---

**O P I N I O N**

**Before Justices Yañez, Rodriguez, and Vela**
**Opinion by Justice Yañez**

After a bench trial, a trial judge found Abraham Chavez Guerrero guilty of various criminal offenses and pronounced punishment at five years' imprisonment. Later that same day, the trial judge changed her finding of guilt to not guilty and entered a judgment of acquittal. The State appeals the trial court's judgment, asserting that a judgment of conviction must be entered because the trial judge lacked the power to change her own reasoned finding of guilt to not guilty. We find that, under the factual circumstances

presented herein, the trial judge was free to change her finding. Because the State is appealing from a valid judgment of acquittal, we further find that the State has no right to appeal, and its appeal must be dismissed for want of jurisdiction.

## I. Background

On July 14, 2005, Guerrero was indicted on one count of attempted sexual assault of a child[1] and two counts of indecency with a child.[2] Guerrero waived his right to a jury trial and elected to have the court assess punishment. A bench trial commenced on July 10, 2006. The child in question, D.F., testified at trial. D.F., a sixteen-year-old female at the time of the alleged assault, and the younger sister of Guerrero's fiancee, testified that Guerrero had made physical, unwanted sexual advances towards her as she laid in her bedroom. Guerrero, testifying in his defense, contested the truthfulness of D.F.'s testimony. According to Guerrero, it was D.F. who made a sexual advance towards him; he immediately rejected the advance and told D.F. that he would be telling her sister about the incident, which D.F. protested because she feared her sister would be upset with her.

After both the State and Guerrero gave their closing arguments, the trial judge stated the following:

> You know, in all sexual assault cases, generally speaking, there's only two people there. And it becomes a credibility issue between the victim and the alleged perpetrator. And so, you have to listen attentively and I had the advantage of hearing [D.F.] in the previous trial as well. You would have to come to the conclusion that this was a huge fabrication. And you would have to be unimpressed with the multiple details and the chronology of what occurred. And so, I'm going to find that, beyond a reasonable doubt, Mr. Guerrero, that you are guilty of attempted sexual assault of a child. And I'm

---

[1] TEX. PENAL CODE ANN. §§ 15.01 (Vernon 2003), 22.01 (Vernon Supp. 2007).

[2] *Id*. § 22.11 (Vernon 2003).

2

also going to find that you are guilty of two counts of indecency with a child.

The trial judge then pronounced Guerrero's punishment, stating:

> Having found you guilty of Count One, attempted sexual assault of a child, I'm going to sentence you to five years in the Texas Department of Criminal Justice. And having found you guilty of two counts of indecency with a child, I'm going to assess punishment at five years for each count. All of these will run concurrent. That is the order of the Court.

After this pronouncement, Guerrero's defense counsel left the courthouse, and the State's counsel informed the victim of the verdict and left the courtroom. Guerrero was taken out of the courtroom and placed in the courthouse's holding cell. Approximately twenty minutes later, the trial judge called Guerrero and the State's counsel back into the courtroom. Attempts were made to get Guerrero's defense counsel to return to the courtroom, but his counsel could not be reached. As a result, a former district judge, who was found in the courthouse, was brought into the courtroom to stand-in as Guerrero's defense counsel.[3] The trial judge then stated the following on the record:

> All right. Mr. Guerrero, go ahead and stand. I try very hard to be comfortable with the rulings that I make. And after you left the courtroom it didn't sit well with me. So, I am going to reverse my ruling. And I am going to find you not guilty on Counts One, Two, and Three. I find that I have a reasonable doubt. By preponderance of the evidence, if it was a civil case, I wouldn't have a doubt. But I don't think there's sufficient evidence to overcome the doubt that I have with regards to perhaps the victim wanting to beat you to the punch on telling her sister over what transpired. So, that is the ruling. It is not guilty on Counts One, Two, and Three, Mr. Guerrero.

The State did not protest this finding at trial. The State filed its notice of appeal on July 17, 2006, and the court entered a judgment of acquittal two days later.

## II. Properly Framing the Issue Before this Court

---

[3] The aforementioned information within this paragraph is known to us through the State's appellate brief, which is supported by Guerrero's brief.

Article 42.01 of the code of criminal procedure states that a trial court's judgment should reflect "[t]he verdict or verdicts of the jury or the finding or findings of the court."[4] In a jury trial, "the written verdict provides the basis for reforming an erroneous recitation in judgment and sentence. In a bench trial the statement by the judge in the record is the only comparable source that may be consulted to learn the decision of the fact finder."[5] "A judgment or sentence may only be reformed 'to cause those instruments to reflect the true finding of the fact finder when such a finding is reflected in the verdict or, in a bench trial, the pronouncement of the court's finding.'"[6]

The trial judge stated on the record that she found Guerrero guilty, and that he would have to serve five years in prison. At that moment in time, those statements constituted the court's findings and, as such, dictated what the court's entered judgment must reflect. The trial judge, however, later retracted the court's earlier findings by making additional statements on the record, whereupon the judge found Guerrero not guilty. The court then entered a judgment reflecting this later finding, as article 42.01 would *seem* to require.

But does article 42.01 demand that the entered judgment reflect the trial judge's finding of not guilty, rather than the judge's previous finding of guilt? Perhaps the more appropriate question is the following: When does a trial judge surrender his or her ability to withdraw a finding of guilt? This latter question succinctly captures the State's sole issue

---

[4]TEX. CODE CRIM. PROC. ANN. art. 42.01, § 1 (Vernon 2006).

[5] *Milczanowski v. State*, 645 S.W.2d 445, 447 (Tex. Crim. App. 1983).

[6] *McCullough v. State*, 720 S.W.2d 89, 90 (Tex. Crim. App. 1983) (quoting *Milczanowski*, 645 S.W.2d at 447).

4

on appeal: "Whether a trial court has the authority to *sua sponte* set aside its finding of guilty after a bench trial, pronouncement of sentence, and all parties left the courtroom."[7]

### III. The State's Appeal is not Barred by Double Jeopardy

"There is a good deal more to be said about the instant cause than that a judgment of acquittal was entered by the trial judge before we can know for sure whether" the State's appeal raises a double jeopardy concern.[8]  This is because an accused will not be subject to double jeopardy unless the accused was *actually* acquitted.[9]  In *Ex parte George*, the court of criminal appeals stated that the word "acquittal" means "a finding of fact that the accused is not guilty of the criminal offense with which he is charged.  *And not just any finding of fact either.  It is an official factfinding* . . . ."[10]  Whether or not the judgment of acquittal in this case was the product of an "official factfinding" is the very question this Court has been asked to answer.

If, as the State contends, the trial judge was bound by her original finding of guilt, then article 42.01 prohibited her from entering a judgment of acquittal.[11]  Despite Guerrero's assertions to the contrary, any failure by the trial court to comply with article 42.01 would result in a void judgment.  As explained by the court of criminal appeals:

> A trial court may have jurisdiction to act over a case, yet lack authority to act in a particular manner over that case. . . .  Lack of *authority* to act in a particular manner may render the judgment either void or voidable

---

[7] State's Brief at 6.

[8] *Ex parte George*, 913 S.W.2d 523, 526 (Tex. Crim. App. 1995).

[9] *Id.*

[10] *Id.* at 527 (emphasis added).

[11] *See* TEX. CODE CRIM. PROC. ANN. art. 42.01 § 1(7).

5

depending on the type of the error, however. Unauthorized acts (or errors) can be characterized as either "illegal" or "irregular." "Illegal acts" are defined as "acts that are not authorized by law." On the other hand, "irregular acts" are defined as "acts or practices that vary from the normal conduct of an action." While a judgment is merely "voidable for irregularity," it is "void for illegality."[12]

If the law only recognizes the trial judge's original finding of guilt, then the entry of a judgment of acquittal was more than a variance from the normal conduct prescribed by article 42.01. Moreover, the trial judge's action would be outside the parameters of any rule or procedure in place at that time. If so, the trial judge's act of entering a judgment of acquittal would be more than a mere violation of statutory procedure; the action would be unauthorized by law and, as such, would be void.[13]

The court of criminal appeals has stated that "'[a] void judgment is a nullity from the beginning, and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights.'"[14] Therefore, if Guerrero's acquittal is the product of a void judgment, he cannot use it to counter the State's appeal on double jeopardy grounds.

We further observe that the State's appellate brief contains the following prayer: "[T]he State respectfully requests that the original judgment and sentence of the trial court be *reinstated* and the second verdict on guilt be treated as a nullity."[15] The State's prayer

---

[12] *See Ex parte Seidel*, 39 S.W.3d 221, 224-25 (Tex. Crim. App. 2001) (citations omitted) (emphasis in original).

[13] *See id.* 225.

[14] *Id*. (quoting *Ex parte Spaulding*, 687 S.W.2d 741, 745 (Tex. Crim. App. 1985) (Teague, J., concurring)).

[15] State's Brief at 22 (emphasis added).

has left this Court with two choices: it may reverse and have the trial court essentially reinstate its originally rendered judgment of conviction, thus obligating the court to enter a judgment of conviction, *or* it may affirm. Neither choice raises a double jeopardy concern.[16] In fact, federal and state courts have continually held that the Double Jeopardy Clause is not violated by an appeal that results in reinstatement of a judgment of conviction.[17]

## IV. The State's Right to Appeal Under Article 44.01

The State contends that it can appeal the trial court's judgment of acquittal because the judgment constitutes either the granting of a new trial, or a modified judgment.[18]

We reject the State's contention that it can appeal the trial court's judgment because it constitutes the granting of a motion for new trial. Though this Court and the court of criminal appeals have liberally interpreted the provision, "grants a new trial," so as to allow the State to appeal various trial court decisions, this has always occurred when the

---

[16] The United States Supreme Court has held that the Double Jeopardy Clause bars a post-acquittal appeal by the prosecution not only when it might result in a second trial, but also if reversal would translate into further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged. *Smalis v. Pennsylvania*, 476 U.S. 140, 145 (1986). None of these results would occur if we granted the relief sought by the State. The State is not asking the Court to afford it a second opportunity to retry Guerrero, nor is it asking the Court to reassess factual issues going to the elements of the offense charged against Guerrero.

[17] *See, e.g., United States v. Aslam*, 936 F.2d 751, 754 (2d Cir. 1991) (citing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 570 (1977); *United States v. Wilson*, 420 U.S. 332, 352-53 (1975)); *United States v.Forcellati*, 610 F.2d 25, 30 (1st Cir. 1979); *People v. Mink*, 565 N.E.2d 975, 981-82 (Ill. 1990); *Commonwealth v. Rawles*, 462 A.2d 619, 621 (Pa. 1983); *State v. Savage*, 933 S.W.2d 497, 500 (Tex. Crim. App. 1996).

[18] *See id.* art. 44.01(a)(2) (stating that the State is entitled to appeal an order of a court in a criminal case if the order arrests or modifies a judgment).

defendant actually raised some sort of motion.[19] In the case at hand, no motions were raised by either party prior to the trial judge revising her findings and pronouncing Guerrero not guilty. Moreover, the judgment of acquittal can hardly be construed as the functional equivalent of the granting of a motion for new trial because the trial court did not previously enter a judgment of conviction.

We do believe, however, that—if the trial court was bound by its original finding of guilt—then the State can appeal the trial court's judgment of acquittal because it constitutes a modified judgment. We arrive at this determination recognizing that the record does not reflect that the trial court first entered a judgment of conviction before it entered its judgment of acquittal. Nonetheless, there are cases in which appellate courts have interpreted a judgment as being "modified" when it failed to reflect a jury's verdict, even though the trial court only entered one judgment, and that judgment was never altered.[20] If a judgment can be construed as modified when it departs from a verdict in a

_____

[19] *See State v. Savage*, 933 S.W.2d at 498-500 (permitting State to appeal from defendant's motion for judgment non obstante verdicto (JNOV) by construing it as the granting of a motion for new trial, despite the fact that JNOV constituted an acquittal); *State v. Bates*, 889 S.W.2d 306, 310 (Tex. Crim. App. 1994) (permitting State to appeal from defendant's "Motion Regarding Conduct of Trial" by construing it as the granting of a motion for new trial); *State v. Evans*, 843 S.W.2d 576, 577-78 (Tex. Crim. App. 1992) (permitting State to appeal from defendant's "Motion to Withdraw Plea of Nolo Contendere" by construing it as the granting of a motion for new trial); *State v. Garza*, 774 S.W.2d 724, 726 (Tex. App.–Corpus Christi 1989, pet. ref'd) (permitting State to appeal from defendant's motion for mistrial by construing it as the granting of a motion for new trial).

[20] In *State v. Cook*, a jury found Cook guilty of driving while intoxicated. No. 13-04-533-CR, 2006 Tex. App. LEXIS 460, at *1 (Tex. App.–Corpus Christi Jan. 19, 2006, no pet.) (mem. op., not designated for publication). The trial court, however, set aside the jury's verdict by signing an "Order on Instructed Verdict (J.N.O.V.)," and entered a judgment finding Cook guilty of public intoxication, instead. *Id.* This Court found that the State had the right to appeal the trial court's action because "the trial court's order *effectively modified* the jury verdict from guilty of driving while intoxicated (DWI) to not guilty of DWI." *Id.* at *6 (emphasis added).

In *State v. Leroy*, a jury found Leroy guilty of misdemeanor assault, and assessed punishment at a fine of "none" and a confinement period of "none." No. 05-04-00260-CR, 2005 Tex. App. LEXIS 1294, at *2 (Tex. App.–Dallas Feb. 17, 2005, pet. ref'd) (not designated for publication). The trial court then signed a judgment sentencing Leroy to one day's confinement and a one dollar fine. *Id.* On appeal, the State asserted that the trial court erred by accepting a jury verdict that constituted no punishment. *Id.* at *1. The State based

8

jury trial, then it can similarly be construed as modified when it purposely departs from a finding in a bench trial.

## V. Could the Trial Judge Abandon the Finding of Guilt?

On appeal, Guerrero asserts that a trial court can change its finding of guilt to a finding of not guilty, after the court pronounces punishment, but no later than the time the court pronounces punishment *and* adjourns for that day. Accordingly, Guerrero asserts that the trial judge could find him not guilty because she did so after punishment was pronounced, but *before* the court had adjourned for the day.

We have found no case law from this State explicitly supporting Guerrero's position, and attempts to find guidance from other states only reveals case law adverse to his claim.[21] In this case law, appellate courts have denied trial courts the authority to abandon a finding of guilt because of double jeopardy and public policy concerns,[22] as well as a belief that a judge should not be able to abandon a pronounced finding any more than he

---

its right to appeal on the allegation that the trial court modified a judgment. *Id*. at *4. The Dallas Court of Appeals, in addressing the State's right to appeal, stated: "To the extent the trial court rendered a judgment when it accepted the jury's verdict on punishment, we agree that the later, *written judgment can be viewed as modifying the initial rendition*. Thus, we have jurisdiction to address the State's complaints involving the final, written judgment." *Id*. at *4-5 (emphasis added; citation omitted).

[21] *See State v. Johnson*, No. S97-10-0692, 1998 Del. Super. LEXIS 129, at *5-7 (Del. Super. Ct. Apr. 7, 1998) (holding that trial court could find defendant guilty, and *sua sponte* reconsider and vacate the finding before it pronounced punishment later that day); *People v. Hutchinson*, 569 N.W.2d 858, 859-60 (Mich. Ct. App. 1997) (holding that trial court could not find defendant guilty, and *sua sponte* reconsider and reverse its finding nine months later, even though it did so prior to pronouncing punishment); *People v. Jones*, 512 N.W.2d 26 (Mich. Ct. App. 1993) (holding that trial court could not find defendant guilty, and *sua sponte* reconsider and reverse its finding eight days later, even though it did so prior to pronouncing punishment); *People v. Carter*, 473 N.E.2d 6, 10-11 (N.Y. 1984) (holding that trial court could not find defendant guilty, and reverse its finding in response to a JNOV motion, even though the court reversed its finding prior to pronouncing sentence); *Commonwealth v. Stark*, 584 A.2d 289, 291 (Pa. 1990) (holding that trial court could not find defendant guilty, and *sua sponte* reconsider and reverse its finding before it pronounced punishment later that day); *Commonwealth v. Fitten*, 657 A.2d 972, 973 (Pa. Super. Ct. 1990) (holding same).

[22] *See Hutchinson*, 569 N.W.2d at 860 (expressing double jeopardy concern); *Jones*, 512 N.W.2d at 30 (expressing double jeopardy and public policy concerns).

or she can abandon a jury's verdict.[23]   And while we have taken these cases into consideration, this Court's evaluation of the propriety of Guerrero's position is ultimately predicated upon various holdings from the court of criminal appeals.

In *Luna v. State*, Luna appealed his conviction to this Court, arguing that "a jury deliberating on punishment has the right to reconsider its determination of guilt after hearing additional evidence during the punishment phase of the trial."[24]   We rejected Luna's argument on the basis that jury trials are bifurcated, stating:

> In Texas, criminal trials are bifurcated into a guilt/innocence phase and a punishment phase.  Article 37.07 authorizes the trial court to "first submit to the jury the issue of guilt or innocence of the defendant of the offense or offenses charged, without authorizing the jury to pass upon the punishment to be imposed."  If a finding of guilty is returned, a separate hearing is held at which evidence relevant to punishment may be introduced by the State and by the defendant.  Punishment is then assessed by the trial court or, if the defendant has so elected, by the jury.
>
> The Legislature clearly intended "determination of guilt" and "assessment of punishment" to be two separate proceedings.  It made no provision for a reconsideration of the decision on guilt, after the punishment phase has begun.  Adopting [Luna's] interpretation . . . would negate the system of bifurcation clearly intended by the Legislature, and would in effect transform the determination of guilt and punishment into a single proceeding.[25]

The court of criminal appeals has held, however, that the bifurcation statute applies only to pleas of not guilty *before a jury* ; it has no application to a plea of not guilty *before a trial court*.[26]   The court has thus held that a trial judge may continue to consider evidence on

---

[23] *See Carter*, 473 N.E.2d at 11 & n.3.

[24] *Luna v. State*, 70 S.W.3d 354, 356 (Tex. App.–Corpus Christi 2002, pet. ref'd).

[25] *Id*. at 361-62 (citations omitted).

[26] *Barfield v. State*, 63 S.W.3d 446, 449-50 (Tex. Crim. App. 2001).

the issue of guilt after it has pronounced its finding of guilt.[27] This is because "the decision of the [trial] court in a unitary trial is not fixed until it renders judgment on guilt and punishment after all the evidence and arguments have been heard."[28]

If a trial court retains the power to consider new evidence in support of its previously pronounced finding of guilt, then it must also retain the ability to *reconsider* evidence admitted prior to the court's pronouncement. Allowing a trial court to consider new evidence and reconsider previously admitted evidence is a meaningless prerogative, however, if the court has no authority to revisit its finding of guilt. Accordingly, the prerogative to continue evaluating evidence of guilt, after a finding of guilt, must mean that a trial court has the authority to second guess its finding, and revise it by a finding of not guilty if the interests of justice so require.

But can a trial court revise its finding of guilt *after* it has pronounced punishment? Relying on the court of criminal appeals' holding in *State v. Aguilera*,[29] Guerrero answers this question in the affirmative. In *Aguilera*, the court held that once a trial court pronounces punishment, the court "retains plenary power to modify its sentence if . . . the modification is made on the same day as the assessment of the initial sentence and before the court adjourns for the day. The re-sentencing must be done in the presence of the defendant, his attorney, and counsel for the state."[30] Guerrero thus contends that a trial court's plenary power over its finding of guilt expires at the same time it loses its power to

---

[27] *See id.* at 451; *Jones v. State*, 532 S.W.2d 596, 597 (Tex. Crim. App. 1976).

[28] *Barfield*, 63 S.W.3d at 451.

[29] *Aguilera*, 165 S.W.3d 695.

[30] *Id*. at 698.

11

modify a sentence.  We agree.

A judgment in a bench trial cannot be fragmented (i.e., conviction and punishment cannot exist independently of each other).[31]  Accordingly, a trial court's plenary power to change punishment constitutes the power to change the judgment in its entirety.  As a result, a court retains the authority to change its finding of guilt.  Should a trial court elect to change its finding of guilt, however, it must undoubtedly follow the same procedural requirements articulated in *Aguilera*: the change must be "done in the presence of the defendant, his attorney, and counsel for the State."[32]  In Guerrero's case, the trial court sufficiently complied with these requirements.

## VI. Conclusion

Because the trial court changed its finding of guilt after pronouncing punishment, *but before the court had adjourned for the day*, we find that the court's judgment of acquittal is valid, rather than void.[33]  Moreover, because the trial judge had the power to change her reasoned finding of guilt to not guilty, we reject the State's contention that the trial court's judgment of acquittal constitutes a modified judgment.  As a result, we find that the State has no right to appeal,[34] and that its appeal must be dismissed for want of

---

[31] *Jones v. State*, 797 S.W.2d 33, 34 (Tex. Crim. App. 1990) (Clinton, J., dissenting) ("Where the issue of punishment is referred to the jury, its verdict is not complete until the jury renders a verdict on guilt and assesses punishment.  So also a finding of guilt by the court in a bench trial without an assessment of punishment is not a conviction.") (citing *Faurie v. State*, 528 S.W.2d 263, 265 (Tex. Crim. App. 1975); *Woods v. State*, 532 S.W.2d 608, 609, n.1 (Tex. Crim. App. 1976)).

[32] *Aguilera*, 165 S.W.3d at 698.

[33] It is important to note that the power to abandon a finding of guilt does not entail the power to abandon a finding of not guilty, for the latter act is barred by double jeopardy.  *See Smalis*, 476 U.S. at 145; *Kepner v. United States*, 195 U.S. 100, 130 (1904).

[34] *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a).

jurisdiction.

_____
LINDA REYNA YAÑEZ,
Justice


Concurring Opinion by Justice Vela.

Do not publish. Tᴇx. R. Aᴘᴘ. P. 47.2(b).

Opinion delivered and filed this
the 25th day of August, 2008.