OPINION OF THE COURT
Richard Lee Price, J.
The defendant is charged with operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law § 1192 [l]j [3]) and unlicensed operation of a motor vehicle (Vehicle and Traffic Law § 509 [1]) and moves to suppress any evidence or testimony concerning his alleged refusal to submit to a chemical breath analysis at trial, claiming: (1) that he was not provided with a clear and unequivocal warning of the consequences of refusing; (2) there was no mechanism to determine whether he understood the warnings that were given; (3) that any refusal was not persistent as required by Vehicle and Traffic Law § 1194 (2) (f); and (4) the New York City Police Department’s failure to provide the defendant with an inter- *294 prefer during the chemical breath testing process violated his rights under the Equal Protection Clause (US Const, 14th Amend, § 1) and Due Process Clause (US Const, 14th Amend, § 1; NY Const, art I, § 6) because it resulted in a disparate practice of affording both chemical breath and physical coordination tests to English-speaking defendants but only a chemical breath analysis to non-English-speaking defendants.
The District Attorney contends that evidence and testimony concerning the defendant’s alleged refusal is admissible because there is no constitutional right to refuse, the warnings administered to him of the consequences of refusing were clear and unequivocal, that he understood them, and that his refusal was persistent in both words and conduct in accordance with Vehicle and Traffic Law § 1194 (2) (f).
On February 18, 2009, this court conducted a hearing on the issue of whether the People should be permitted to introduce evidence and elicit testimony concerning the defendant’s alleged refusal to submit to a blood alcohol content (BAC) or Intoxilyzer breath test at trial, as well as whether the arresting officer’s stop of the defendant’s vehicle was justified and whether his demand that the defendant submit to a portable breath test (PBT) was proper. Upon hearing oral argument from both the defendant and the People concluding on February 24, 2009, and after reviewing their respective papers submitted in support thereof and documents on file with the court and viewing the video, defendant’s motion is denied in its entirety.
Findings of Fact
At the hearing, the People called one witness, Police Officer Christopher Baumann, who stated that he has made approximately 600 arrests during his 13V2 years as a New York City police officer, approximately 70 of which involved driving while intoxicated (hearing transcript at 4-5). The defendant called no witnesses. This court finds Officer Baumann’s testimony credible to the extent indicated herein.
On June 1, 2008, at about 3:50 a.m., Police Officer Baumann of the 48th Precinct, working alone (hearing transcript at 5), observed a Chevrolet Impala, traveling on Webster Avenue from 180th Street in Bronx County, proceed “through three steady red lights up to 187th Street” (hearing transcript at 6). Officer Baumann, dressed in uniform and driving a marked police vehicle (hearing transcript at 5), stopped the Chevrolet Impala, exited his vehicle and approached the driver’s side of the Impala (hearing transcript at 6-7). Relative to the subsequent events, Officer Baumann testified on direct examination as follows:
*295 “Q: Did you approach the vehicle?
“A: Yes. I approached the driver’s side of the vehicle. I asked the driver to produce a valid New York State license and paperwork to the vehicle.
“Q: Was the defendant able to produce a New York State license?
“A: No, he did not.” (Hearing transcript at 7.)
“Q: In what language did you ask the defendant to produce such license?
“A: English.
“Q: Did the defendant indicate that he understood what you were asking him?
“A: Yes.
“Q: Okay. How so?
“A: In broken English.
“Q: What was his response?
“A: He stated he didn’t have one.” (Hearing transcript at 8.)
On cross-examination, Officer Baumann again testified as follows:
“Q: And you say that you asked Mr. Burnet for his driver’s license?
“A: Correct.
“Q: Did you make any sort of gesture when you asked him that or did you say can I have your license and registration, do you recall?
“A: I request like all the time can I please have your license, registration card and insurance card to your vehicle?
“Q: It’s your testimony that Mr. Burnet responded in some way?
“A: I believe he told me he did not have a license.
“Q: You believe he said that or he said that?
“A: He stated he didn’t have a license.” (Hearing transcript at 24-25.)
During Officer Baumann’s conversation with the defendant, he observed that the defendant had “a strong odor of alcohol coming from his breath,” bloodshot eyes, slurred speech and a flushed face (hearing transcript at 7, 25, 31-32). Officer Baumann, speaking in English, directed the defendant to exit his vehicle (hearing transcript at 7-8). The defendant complied and “stepped out of the vehicle ... to the rear” (hearing transcript *296 at 8-9). When walking to the rear of his vehicle, the defendant was unsteady, “swaying back and forth . . . rocking back, to the right, [and] to the left” (hearing transcript at 32). Again speaking in English, Officer Baumann asked the defendant to submit to a PBT, which he had been trained to administer. The defendant, again responding in English, agreed to take it (hearing transcript at 9). The PBT registered a .195% BAC and defendant was placed under arrest (hearing transcript at 10).
The defendant was taken to the 48th Precinct and then transported to the 45th Precinct for the purpose of having a highway[1] officer administer an Intoxilyzer breath test (hearing transcript at 10, 34). Once there, Highway Officer Edwards, speaking in English, offered the defendant an opportunity to take an Intoxilyzer breath test. The defendant then watched and listened to a videotape in Spanish offering him an opportunity to take the breath test (hearing transcript at 11).[2] The pertinent portion of that warning provided, as follows: “You have been arrested for driving a vehicle under the influence of alcohol or drugs. I would like you to take a chemical exam of your breath. Do you want to take the test, yes or no?”[3]
Defendant indicated that he would submit to the test by stating, “no problem.”[4] Officer Edwards demonstrated to the defendant the manner in which he was to use the mouthpiece and blow into the Intoxilyzer machine, after which the defendant appeared to nod in acknowledgment. The defendant walked to the machine and, in response to Officer Edward’s directive in English, placed his hands behind his back (hearing transcript at 38). He inserted the mouthpiece of the machine into his mouth but failed to provide a sufficient breath sample.[5] Being unable to obtain a reading, Officer Edwards instructed the defendant to blow. The defendant placed his mouth on the mouthpiece and appeared to make another attempt at blowing into the machine. *297 Again, however, he failed to provide a sufficient breath sample. At that time, the defendant was brought in front of a video, which he watched and listened to in Spanish, that advised him of the consequences of refusing to submit to the Intoxilyzer breath test.[6] The pertinent portion of that warning provided, as follows:
“or whatever part of the same, this will result in the immediate suspension and the subsequent revocation of your driver’s license, or driving privileges, whether or not you are found guilty of the charges for which you have been arrested.
“Also, if you refuse to submit to a chemical test or whatever part of the same, this could be presented as evidence against you in any trial, proceeding, or hearing as a result of the arrest. I ask you again. Do you want to take the chemical test, yes or no?”[7]
After watching that videotape, the defendant responded, “No.”
Conclusions of Law
Initially, the People have the burden of commencing a suppression hearing by presenting evidence of probable cause to show the legality of the police conduct (People v Baldwin, 25 NY2d 66 [1969]; People v Malinsky, 15 NY2d 86 [1965]). Once the People have met this burden, it is the defendant that bears the burden of proving any illegality of the police conduct (People v Berrios, 28 NY2d 361 [1971]; People v Baldwin, 25 NY2d 66 [1969]). Here, the People have presented sufficient evidence that the stop of defendant’s vehicle was proper based upon Police Officer Baumann’s reasonable suspicion that the defendant had committed a violation of the Vehicle and Traffic Law (People v Ingle, 36 NY2d 413 [1975]). It is undisputed that the Officer observed the defendant’s vehicle proceed through three steady red traffic signals. Accordingly, once Officer Baumann stopped the defendant’s vehicle, he had a common-law right to approach the vehicle and inquire as to the reason for the defendant’s traffic signal infractions. Upon approaching the vehicle, the Officer observed defendant, the sole occupant, seated behind the steer *298 ing wheel. After requesting that the defendant produce a valid New York State driver’s license, registration card and insurance card, Officer Baumann smelled a strong odor of alcohol emanating from defendant’s breath and observed him to have bloodshot eyes, slurred speech and a flushed face. At that point, Officer Baumann had reasonable suspicion to believe that the defendant was intoxicated and was justified in directing him out of the vehicle (see People v De Bour, 40 NY2d 210, 223 [1976]). Upon observing that defendant was unsteady on his feet and was swaying from side to side, Officer Baumann was justified in asking the defendant to take a PBT. The defendant agreed and took the test, which resulted in a reading of .195%. Having failed the test, Officer Baumann had probable cause to arrest the defendant for operating a motor vehicle while intoxicated (see People v Bigelow, 66 NY2d 417, 423 [1985]; People v Goodell, 164 AD2d 321, 323-324 [4th Dept 1990], affd 79 NY2d 869 [1992]; People v Farrell, 89 AD2d 987, 988 [2d Dept 1982]). Accordingly, the challenge to the legality of defendant’s stop and arrest fails.
Regarding defendant’s alleged refusal, defendant correctly states that the People bear the burden of establishing that the defendant refused to submit to a chemical test (People v Camagos, 160 Misc 2d 880, 881 [Crim Ct, Queens County 1993, Yellen, J.]). To meet this burden, however, the People are not required to disprove every possible fact that might weigh in favor of suppression (People v Womack, 18 Misc 3d 1135[A], 2008 NY Slip Op 50139[U] [Crim Ct, NY County 2008, Whiten, J.]).
Vehicle and Traffic Law § 1194 (2) (f) provides:
“Evidence of a refusal to submit to such chemical test or any portion thereof shall be admissible in any trial, proceeding or hearing based upon a violation of the provisions of section eleven hundred ninety-two of this article but only upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal.”
Courts have permitted the People to use evidence of a refusal to submit to a chemical test as consciousness of guilt evidence. Where a Spanish-speaking defendant charged with driving while intoxicated was given refusal warnings in Spanish similar to those stated above, the warnings were in clear and unequivocal language (People v Coludro, 166 Misc 2d 662 [Crim Ct, Kings County 1995, Ruchelsman, J.]). The court in Coludro thus *299 permitted the People to admit at trial that the defendant replied “no” when asked if he would submit to a chemical breath test. In People v Reynolds (133 AD2d 499 [3d Dept 1987]), the court also permitted the People to admit evidence of defendant’s refusal at trial where the defendant was clearly and unequivocally warned of the consequences of doing so.
Here, defendant argues that the refusal warnings administered to the defendant were not clear and unequivocal. Specifically, the portion of the warnings that states, “if you refuse to submit to a chemical test or whatever part of the same, this could be presented as evidence against you,” is unclear because it is unclear what “this” refers to. The court disagrees. The court has reviewed the entire translated transcript of the refusal warning given to defendant in Spanish, which is in evidence as court exhibit 1, and finds it to be clear and unequivocal on its face.
Defendant further argues that even if the refusal warnings were given in “clear and unequivocal language,” evidence of his refusal must nevertheless be suppressed because he did not understand them. However, whether the defendant failed to understand them or believed them to be ambiguous is not a basis for suppression (Gagliardi v Department of Motor Vehs., 144 AD2d 882 [3d Dept 1988]; People v Camagos, 160 Misc 2d 880 [1993]). Rather, a determination of whether the refusal warnings were in “clear and unequivocal language” must be based on an objective standard independent of whether the defendant actually understood them (People v Reynolds, 133 AD2d 499, 502 [1987]; Matter of Carey v Melton, 64 AD2d 983 [1978]).
With respect to the persistence of a defendant’s refusal, there is no requirement that such persistence be repetitive nor is there a minimum number of times that he must refuse (see People v Bratcher, 165 AD2d 906 [3d Dept 1990]; Matter of Nicol v Grant, 117 AD2d 940 [3d Dept 1986]). In Nicol, the defendant consented to the chemical test and then refused. Despite recanting her refusal, the court found that her actions indicated a refusal (Nicol, 117 AD2d 940 [1986]). In Bratcher, the defendant refused to breathe into the Intoxilyzer after being advised that his first attempt was insufficient to obtain a reading. The court found that this action indicated a refusal (Bratcher, 165 AD2d 906 [1990]). Here, the defendant initially agreed to take the test but later refused. Moreover, he ostensibly failed to follow instructions as to how to properly execute the test. Accordingly, defendant’s refusal was persistent.
*300 Certainly, it can be argued that the defendant’s purported refusal to submit to the Intoxilyzer was the result of his inability to understand English, not a consciousness of guilt. And nothing precludes the defendant from arguing as much to a jury. Conversely, while the People acknowledge that Spanish may indeed be the defendant’s primary language, they contend that he nevertheless appeared to also understand some English. Indeed, the testimony of Officer Baumann as well as the videotape of Officer Edwards administering the Intoxilyzer breath test supports this contention. The defendant did appear to understand the directions given to him in English, as evidenced by his compliance with them. At times, he even responded verbally in English. Under these circumstances, whether the defendant’s alleged refusal was attributable to his consciousness of guilt or a language barrier is a factual issue for the jury to resolve.
 Defendant’s other contention, that the New York City Police Department’s failure to provide the defendant with an interpreter during the chemical breath testing process violated his rights under the Equal Protection Clause (US Const, 14th Amend, § 1) and Due Process Clause (US Const, 14th Amend, § 1; NY Const, art I, § 6), because it resulted in a disparate practice of affording both chemical breath and physical coordination tests to English-speaking individuals but only a chemical breath analysis to non-English-speaking individuals, is also unpersuasive.
It is true that “[wjhere governmental action disadvantages a suspect class or burdens a fundamental right, the conduct must be strictly scrutinized and will be upheld only if the government can establish a compelling justification for the action” (SoberalPerez v Heckler, 717 F2d 36, 41 [2d Cir 1983]). However, absent such a showing of discrimination or infringement on a fundamental right, a statute challenged as violative of the Equal Protection Clause may only be struck if it has no “rational basis” (Heller v Doe, 509 US 312, 319 [1993]; Soberal-Perez, 717 F2d 36 [1983]; Alevy v Downstate Med. Ctr. of State of N.Y., 39 NY2d 326, 332 [1976]). Neither the federal nor the state constitution identifies all persons who do not speak English as members of a suspect or protected class (Yellen v Baez, 177 Misc 2d 332 [Civ Ct, Richmond County 1997, Straniere, J.]). Accordingly, merely because, as counsel suggests, English-speaking defendants may be offered both chemical breath and physical coordination tests but non-English-speaking defendants are *301 only offered a chemical breath analysis does not entitle him to strict scrutiny.
Of course, that does not necessarily mean that such a classification can never be the basis of a finding of discrimination. Obviously, where it creates a discriminatory result against all persons who do not speak English, rather than persons of any particular nationality, strict scrutiny may very well be appropriate. For defendant to succeed on such a claim, however, he would need to demonstrate that the members of this so-called suspect class, non-English-speaking criminal defendants, have been the subject of discriminatory behavior based on race, nationality or ethnicity. Defendant has failed to make any such showing. All defendant has shown is that the non-English-speaking defendants are not offered the option of taking a physical coordination test so as to avoid confusion and complications due to any language barrier. And the method chosen here to achieve that result is indeed rationally related to that purpose, which is simply to avoid administering that particular sobriety test.
Defendant’s procedural due process argument also fails. Although this court is unaware of any federal or state constitutional right to have interpretation services in either judicial or extrajudicial proceedings, it seems that the failure to provide a qualified interpreter in court proceedings would indeed be a denial of due process of the law (People v Rodriguez, 145 Misc 2d 105 [Sup Ct, Queens County 1989, Friedmann, J.]). Clearly, it is necessary for litigants who do not speak sufficient English to understand court proceedings (see United States v Mosquera, 816 F Supp 168 [ED NY 1993]; People v Ramos, 26 NY2d 272 [1970]; People v Johnny P., 112 Misc 2d 647 [Crim Ct, NY County 1981, Gartenstein, J.]). The chemical test proceeding, however, is neither judicial nor criminal; it is administrative. Accordingly, there is no fundamental right to an interpreter during a chemical test process.
With regard to a defendant’s submission to a chemical test, Vehicle and Traffic Law § 1194 (2) (a) provides,
“[a]ny person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test . . . for the purpose of determining the alcoholic and/or drug content of the blood provided that such test is administered by or at the direction of a police officer.”
Further, there is no constitutional, fundamental or other right to refuse to submit to a chemical test (Schmerber v California, *302 384 US 757 [1966]; People v Goodell, 79 NY2d 869 [1992]; People v Shaw, 72 NY2d 1032 [1988]; People v Thomas, 46 NY2d 100 [1978]). Driving is commonly held to be a privilege, not a right. Thus, acceptance of a license requires adherence to all associated statutory and regulatory requirements including consent to submit to a chemical test. However, even if this court held driving to be a right, which it does not, such a discussion would be irrelevant to this court’s analysis since Vehicle and Traffic Law § 1194 (2) (a) applies to “any person who operates a motor vehicle,” notably omitting any requirement that such person must first possess a valid driver’s license. As such it is of no consequence that the uncontroverted evidence adduced at the hearing established that the defendant was not in possession of a valid New York State driver’s license. Since there is no right to refuse a chemical test, it is axiomatic that there is no constitutional or fundamental right to an interpreter throughout the entire chemical test process. Defendant’s equal protection and due process claims are therefore denied.
Accordingly, this court finds that viewing the evidence in the light most favorable to the People (see People v Williams, 84 NY2d 925 [1994]; see also People v Contes, 60 NY2d 620 [1983]), they have satisfied their burden of demonstrating by a preponderance of the evidence that pursuant to Vehicle and Traffic Law § 1194 (2) (f), the defendant was given a warning in clear and unequivocal language of the consequences of refusing to submit to a chemical test, and that he persisted in that refusal. Defendant’s motion to suppress any evidence or testimony of the defendant’s alleged refusal is therefore denied.

. While not specifically stated by Officer Baumann, it is believed that his use of “highway” refers to an Intoxicated Driver Testing Unit officer affiliated with the New York City Police Department Highway Patrol.

. See videotape recording of Officer Edwards and the defendant inside the 45th Precinct received in evidence as People’s exhibit 1.

. See transcript of the warnings administered to the defendant in Spanish and the corresponding translation into English. The parties agreed that this transcript and translation accurately reflect the audio portion of the videotape recording relative to the warnings given and was received in evidence as court exhibit 1.

. See videotape of Officer Edwards offering the defendant an opportunity to take the Intoxilyzer breath test inside the 45th Precinct.

. (Id.)

. (Id.)

. See transcript of the warnings administered to the defendant in Spanish and the corresponding translation into English. The parties agreed that this transcript and translation accurately reflect the audio portion of the videotape recording relative to the warnings given and was received in evidence as court exhibit 1.