OPINION OF THE COURT
Peter J. Benitez, J.
Defendant was stopped by police officers assigned to the Triborough Bridge and Tunnel Authority after he went past the toll booth in a “cash only” lane without paying the required toll. Based on his apparent intoxication defendant was then taken to the New York City Police Department’s 45th Precinct where intoxicated driving testing is routinely conducted. There he was shown a videotape in the Spanish language which explained the breath test and he consented to take the test. After being given the breath test he was not offered an opportunity to perform the standard coordination tests.
*882 After the trial jury was sworn, defendant claimed that his rights had been violated by the New York City Police Department officer (hereinafter the highway officer) who administered the breath test to determine defendant’s blood alcohol content and who decided not to administer coordination tests to defendant because that officer did not believe that defendant understood English. Defendant moved to dismiss the charges and this court reserved decision. This court did permit defendant to explore the failure to administer coordination tests during cross-examination of the highway officer before the jury. Defendant re-renewed the motion to dismiss at the close of the evidence and this court again reserved decision. After the jury’s verdict finding defendant guilty of the crime of driving while intoxicated per se (Vehicle and Traffic Law § 1192 [2]), defendant moved for various forms of relief. Defendant moved to suppress the videotape of the administration of the breath test and moved to set aside the verdict and dismiss the charges based on claimed violations of defendant’s constitutional rights to due process and equal protection. The People oppose those motions.[1]
Defendant’s motion to suppress the videotape of the breath test on the ground that defendant was not also offered an opportunity to take coordination tests is denied. Amy motion to suppress physical evidence based on claimed violations of defendant’s constitutional rights must be made before the trial commences absent good cause. Here, defendant knew prior to trial that he had not been offered the coordination tests because of a perceived language barrier. Defendant never moved to suppress the videotape of the breath test prior to trial and such motion is now untimely.
Nevertheless, defendant did claim during trial that the failure to offer him the coordination tests violated his due process and equal protection rights, developed an evidentiary record concerning the highway officer’s actions, and sought dismissal of the charges during the trial. While a defendant has no burden to prove or disprove anything at trial, it is well recognized that defendant does have the right to obtain and present evidence at trial should defendant choose to do so. (See generally People v *883 Robinson, 89 NY2d 648 [1997].) If defendant was unable to present evidence at trial, his claim that governmental actions unconstitutionally prevented him from gathering or preserving such available evidence, a court could be asked to determine whether such actions were proper. Accordingly, defendant can move to set aside the jury’s verdict and have the court determine whether the officer’s actions violated defendant’s constitutional rights and, if so, whether such resulted in a verdict that, as a matter of law, would need to be reversed on appeal. (See GPL 300.30 [1].)
Defendant was tried before this court and a jury on charges of driving while intoxicated per se (Vehicle and Traffic Law § 1192 ), driving while intoxicated (Vehicle and Traffic Law § 1192 ) and driving while ability impaired (Vehicle and Traffic Law § 1192 [1]). The jury was instructed that it was to consider the per se count first and, if it found defendant guilty of that count, it was not to consider any of the remaining counts. The jury found defendant guilty of the per se count. Importantly, under the per se count, as charged to the jury, a blood alcohol level of .08 of one per centum or more at the time of the operation of the vehicle constitutes the commission of the offense regardless of how the consumption of alcohol affected defendant’s ability to operate that vehicle and regardless of whether defendant exhibited characteristics associated with intoxication. (See CJI2d[NY] Vehicle and Traffic Law § 1192 [2].) However, the jury was instructed that, in determining whether defendant did operate the vehicle while having .08 of one per centum or more of alcohol in his blood, it could consider defendant’s physical condition and any indicia of intoxication.
Therefore, the relevance of defendant’s physical condition to the per se count, as might have been revealed had he been offered the coordination tests and should he have agreed to perform those tests, was slight. As is well known, a person may consume alcohol to the extent of having a blood alcohol level of .08 of one per centum or more and not outwardly exhibit signs of intoxication beyond having an odor of alcohol and bloodshot eyes. Accordingly, if the arresting officer’s action in not having offered defendant the opportunity to perform coordination tests due to the fact that defendant did not appear to understand English did violate defendant’s rights, this court would have to further consider the remedy to which defendant would be entitled due to the minimal relevance of such tests to the charge on which defendant was convicted.
*884 Defendant’s Equal Protection Claim
Governmental action which provides benefits or privileges to some but not to all persons or which denies benefits or privileges to some but not all persons can violate the US Constitution’s protection against the denial of equal protection. In Soberal-Perez v Heckler (717 F2d 36, 41 [2d Cir 1983]), the court considered whether a federal agency’s failure to provide Social Security benefit instructions in the Spanish language violated equal protection guarantees and stated:
“Where governmental action disadvantages a suspect class or burdens a fundamental right, the conduct must be strictly scrutinized and will be upheld only if the government can establish a compelling justification for the action. See, e.g., Regents of the University of California v. Bakke, 438 U.S. at 299-300, 98 S.Ct. at 2752-2753; San Antonio School District v. Rodriguez, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). Where a suspect class or a fundamental right is not implicated, the challenged action need only be rationally related to a legitimate governmental purpose. See Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976).”
In addressing the claim that the classifications based on language are classifications based on ethnicity, the court in Soberal-Perez v Heckler (at 41) stated:
“Hispanics as an ethnic group do constitute a suspect class for the purpose of equal protection analysis, Keyes v. School District No. 1, 413 U.S. 189, 197, 93 S.Ct. 2686, 2691-92, 37 L.Ed.2d 548 (1973); Hernandez v. Texas, 347 U.S. 475, 477-79, 74 S.Ct. 667, 669-71, 98 L.Ed. 866 (1954). Nevertheless, the conduct at issue here, the Secretary’s failure to provide forms and services in the Spanish language, does not on its face make any classification with respect to Hispanics as an ethnic group. A classification is implicitly made, but it is on the basis of language, i.e., English-speaking versus non-English-speaking individuals, and not on the basis of race, religion or national origin. Language, by itself, does not identify members of a suspect class. Frontera v. Sindell, 522 F.2d 1215, 1219-20 (6th Cir. 1975); Carmona v. Sheffield, 475 F.2d 738, 739 (9th Cir. 1973).”
*885 The highway officer’s decision not to offer defendant an opportunity to perform coordination tests was based on the officer’s belief, formed from attempting to converse with defendant, that defendant did not speak and understand English and, therefore, the highway officer determined he was not able to personally communicate to defendant his instructions concerning the correct manner to perform the tests. The defendant’s national origin had no bearing on the highway officer’s actions. For example, for many Hispanics born in the United States, English is their first language or, if not, they nevertheless do understand English. Accordingly, English-speaking Hispanics are offered the coordination tests. Likewise, people of many other non-United States national origins who do speak and understand English are offered the tests. Rather, it is those persons who do not understand English to whom the highway officer did not offer the coordination tests. The officer’s actions in not offering coordination tests because of a language barrier would have also been the same had the defendant been deaf or too intoxicated to understand English, regardless of defendant’s heritage.
Accordingly, the actions of the highway officer did not single out defendant for denial of the opportunity to perform coordination tests because of his ethnicity. Nor did the officer’s actions result in denying those of a particular ethnicity the opportunity to perform coordination tests, as many of defendant’s ethnicity do speak and understand English and are given the opportunity to take the tests. The class of persons thus affected by the highway officer’s actions is simply those who do not understand English.
Yet, governmental actions based on classifications which are not on their face based on a suspect class, in this case ethnicity, could result in disadvantaging a particular group. There, the equal protection test, as stated in Soberal-Perez v Heckler (at 41-42) is the following:
“It is true that facially neutral conduct can constitute discrimination in violation of the Equal Protection Clause; however, such a claim requires that a plaintiff show an intent to discriminate against the suspect class. Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265-70, 97 S.Ct. 555, 563-66, 50 L.Ed.2d 450 (1977); Washington v. Davis, 426 U.S. 229, 240-42, 96 S.Ct. 2040, 2047-49, 48 L.Ed.2d 597 (1976); see Personnel *886 Administrator of Massachusetts v. Feeney, 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979) . . .
“Plaintiffs argue that intent to discriminate against Hispanics may be inferred because ‘the natural, probable and foreseeable result’ of the Secretary’s action is a disproportionate impact upon Hispanics.
‘ “Discriminatory purpose”, however, implies more than intent as volition or intent as awareness of consequences.’ Personnel Administrator of Massachusetts v. Feeney, 442 U.S. at 279, 99 S.Ct. at 2296. To establish intentional discrimination, a plaintiff must show that ‘the decisionmaker . . . selected or reaffirmed a particular course of action at least in part “because of’ not merely “in spite of’ its adverse effects upon an identifiable group.’ Id.”
Here, this court finds that the highway officer’s decision not to offer the coordination tests to defendant because of the officer’s perception that defendant did not understand English was not an action based upon ethnic classification, but rather based on ability to understand the English language. Furthermore, defendant does not even claim that the highway officer had an intent to discriminate against Hispanics.
Accordingly, that action must satisfy the legitimate governmental purpose test. The highway officer testified at trial that he did not offer the coordination tests to the defendant as defendant clearly did not understand English. He testified that he did not attempt to explain those tests in English because the coordination tests instructions were very specific and required contemporaneous demonstration of the tasks to be performed. Indeed, the coordination tests instruction sheet used by the highway officer contains 30 lines of instructions to be read to the person being asked to perform the tasks. The highway officer further testified that he could not rely on another person who might speak defendant’s language to translate his instructions to the defendant because he could not be sure the translator would be sufficiently fluent in defendant’s language and be able to accurately translate the instructions or provide the required demonstration. The highway officer testified that he had to determine whether defendant was able to perform the coordination tests and could not accurately do so under these circumstances.
Further, the People assert that, for the New York City Police Department to be able to offer coordination tests to non- *887 English-speaking arrestees, the Department would have to have interpreters fluent in many different languages available at all times of the day or night who are able to be dispatched quickly to the DWI testing facilities in each borough of the city when needed. Multiple interpreters of each language would be needed because there may be a number of tests to be administered at a particular time in one particular borough while interpreters of the same language may be needed in other boroughs. The cost for establishing such interpreting services would clearly be substantial.[2]
Additionally, even though a Spanish-speaking officer, the arresting officer, was present at the DWI testing facility, the highway officer explained that interpreting the coordination tests instructions was far more complex than his asking the Spanish-speaking officer to explain to defendant that he has to blow continuously into the Intoxylyzer machine to accurately obtain a breath sample. As stated above, the written coordination tests instructions consist of 30 lines of instructions with simultaneous demonstration by the officer. Accordingly, the highway officer explained that he could not be sure that the Spanish-speaking officer could correctly translate the coordination tests instructions without his having been properly trained to do so.
Defendant’s Due Process Claim
[3] Defendant contends that the failure of the New York City Police Department to provide translation services to non-English-speaking persons in order to perform the DWI coordination tests violates his right to due process. It is well established that “ [procedural due process imposes constraints on governmental decisions which deprive individuals of ‘liberty’ or ‘property’ interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.” (Mathews v Eldridge, 424 US 319, 332 [1976].) While the determination by the police that an individual has been driving while under the influence of alcohol or drugs can result in an arrest and deprivation of liberty, the investigation of suspected intoxicated driving by the police, in the field or at the intoxicated driver testing facility, is *888 not a judicial, quasi-judicial or even an administrative proceeding. Accordingly, there is no authority for the proposition that due process applies to the conduct of such investigations.
Wherefore, defendant’s motions to suppress the videotape of the breath test and to set aside the verdict of guilty is in all respects denied.

. This issue has been previously addressed by two courts here in the Bronx, People v Molina (25 Misc 3d 362 [Sup Ct, Bronx County 2009]) and People v Burnet (24 Misc 3d 292 [Sup Ct, Bronx County 2009]), the court in Molina finding a violation of due process and equal protection and the court in Burnet finding no such violations. This issue, as it relates to coordination tests, does not appear to have been addressed by any other courts in the United States.

. The People’s argument that court interpreters would have to provide the translation services in the DWI testing facilities and such would interfere with court operations is misplaced. The court system does not now and would not be required to provide interpreter services to police departments if the court were to require translation of coordination tests instructions.