OPINION OF THE COURT
David J. Kirschner, J.
By an accusatory instrument filed August 25, 2014, defendant was charged with three counts of operating a motor vehicle while under the influence of alcohol or drugs (two counts as intoxicated, Vehicle and Traffic Law § 1192 [3], [4], both misdemeanors; one count as impaired, Vehicle and Traffic Law § 1192 [1], a violation).
In a motion dated January 20, 2017, defendant moved to dismiss the charges on the grounds that his equal protection rights were violated. In papers dated April 12, 2017, the People opposed. On June 19, 2017, this court denied the motion. This expands that decision.
I. Background and Procedural History
The charges against defendant stem from his arrest on August 24, 2014, at approximately 5:00 a.m. in front of 1447 Gleason Avenue in Bronx County. It is alleged that police officers observed defendant drive his SUV through a steady red light at the intersection of St. Lawrence and Gleason Avenues. Upon stopping and approaching him, the arresting officer detected a strong odor of alcohol emanating from his breath, and observed him to have bloodshot and watery eyes and slurred speech, and to be unsteady on his feet. Defendant admitted he had been in a bar and consumed about nine beers. He submitted to a chemical breath analysis test, the result of which was that he had a blood alcohol content of .14 of one per centum by weight.
On August 25, 2014, defendant was arraigned on the charges, entered a plea of not guilty, and was released on his own recognizance. His driving privilege in New York was suspended. He was also ordered to undergo screening and assessment for substance abuse.
*885 By motion dated October 27, 2014, defendant moved to suppress the statements he made to the police and the result of the chemical breath test claiming, among other things, that they were the fruit of an improper and unlawful arrest. On November 18, 2015, a hearing was held on that motion. On December 22, 2015, defendant’s motion to suppress was denied in all respects.
Then, as noted, defendant moved to dismiss the charges in the information claiming that his equal protection rights were abrogated in violation of Criminal Procedure Law § 170.30 (1) (f), US Constitution, 14th Amendment, § 1 and article I, § 11 of the NY Constitution. Defendant maintains that the policy of the New York City Police Department (NYPD) is to offer English-speaking people under suspicion of driving while impaired or intoxicated the opportunity to perform physical coordination tests. He alleges that as an English-speaking person, the police, based on his Hispanic ethnicity, engaged in a discriminatory practice by depriving him of the same opportunity afforded to other English-speaking people.
The People, however, argue that after interacting and communicating with defendant, the arresting officers had a reasonable basis to believe that defendant was not fluent in English. Consequently, their decision to not offer him the physical coordination test was not based on his Hispanic ethnicity, but rather on his inability to correctly understand the instructions.
II. Discussion
The United States Constitution mandates that the states afford the same rights, privileges, and protections to all within its jurisdiction (US Const, 14th Amend, § 1). Likewise, the New York State Constitution provides a similar protection (NY Const, art I, § 11). In addressing claims alleging equal protection violations, a court first must determine whether to apply a strict scrutiny analysis or the less stringent rational basis analysis (Heller v Doe, 509 US 312, 319 [1993]; Regents of Univ. of Cal. v Bakke, 438 US 265 [1978]; Soberal-Perez v Heckler, 717 F2d 36, 41 [2d Cir 1983]; Alevy v Downstate Med. Ctr. of State of N.Y., 39 NY2d 326, 332 [1976]; People v Salazar, 112 AD3d 5, 9 [1st Dept 2013]).
When a practice by the government creates a burden on a fundamental right or disadvantage for a suspect class, the strict scrutiny test must be applied (id.). Strict scrutiny requires the government to provide a credible justification for *886 the practice. Otherwise, it will be struck down (id.). But absent an infringement on a vital right or demonstration of discrimination, the government practice will be struck down only if there is no rational basis for it (id.).
In this case, defendant challenges the practice of the NYPD of offering physical coordination tests only to English-speaking people. He claims he is English-speaking and the police declined to offer him the tests based on his Hispanic ethnicity. Defendant contends that this ethnicity determination was discriminatory. The People argue that the police did not offer the tests based upon their reasonable perception of defendant’s inability to fully comprehend and speak English, not his ethnicity.
The record of the suppression hearing demonstrates that the police had a sound belief that defendant was not fluent in English, and certainly that English was not his primary language. The arresting officer, who was fluent in Spanish and English, introduced himself to defendant in English but throughout their interaction, spoke to defendant in both languages (Per-alta at 17).[1] Additionally, as depicted in the videotape presented at the suppression hearing, when defendant spoke English at the precinct, he did so with a distinct Spanish accent (id. at 24-25; People’s exhibit 2). Perhaps most saliently, though, is that the chemical breath test instructions were administered in Spanish through the use of a Spanish language videotape recording (Peralta at 24). Thus, there is credible evidence that the police had a reasonable perception that defendant was not fluent in English.
Moreover, a refusal to offer a physical coordination test based on a person’s language is facially neutral (People v Salazar, 112 AD3d at 9). If a practice is facially neutral, intentional discrimination must be established to apply a strict scrutiny analysis. Given that the NYPD’s facially neutral practice of determining whether to offer the tests is wholly rooted in language, and not race or ethnicity, no suspect class is burdened. While Hispanics, as an ethnic group, are generally a recognized suspect class for equal protection analysis, there is no indication here that defendant’s language was a substitute for his ethnicity or a pretext for discrimination. Since no suspect class was burdened, and defendant failed to demon *887 strate the existence of intentional discrimination, strict scrutiny analysis is not warranted (Hernandez v New York, 500 US 352, 371-372 [1991]; People v Aviles, 28 NY3d 497 [2016]).
Instead, a rational basis analysis is appropriate in analyzing the practice here. Under this analysis, the government must demonstrate that the practice is rationally related to a legitimate governmental purpose (Board of Trustees of Univ. of Ala. v Garrett, 531 US 356, 367 [2001]). Here, it is.
The practice of not offering the coordination test to non-English speakers is rationally related to the government’s interest in the reliability of coordination tests. Conducting it through a Spanish-speaking police officer, rather than a certified translator, may substantially compromise the results if instructions are improperly translated, which could be incorrectly perceived as evidence of intoxication. Not offering such test to persons less than proficient in English ensures that defendants are not falsely deemed intoxicated. Additionally, it is entirely unrealistic to require police departments to maintain on-call qualified interpreters. Doing so would impose substantial financial and administrative burdens on the government {Salazar, 112 AD3d at 9). Even if providing such translators was realistic, it is unlikely to eliminate the risk of an improper translation. An inaccurate or faulty translation of instructions, regardless of how slight, may ultimately result in noncompliance, which could be erroneously interpreted as evidence of intoxication.
Defendant argues that even under a rational basis analysis, his equal protection rights were violated because he spoke English, thereby obviating the need for a translator. Whether defendant spoke some English is not the issue; that he purportedly did not speak English fluently or proficiently is. It was precisely this perception that led officers to administer the chemical breath test through the official Spanish language videotape translation. Even if such perception was erroneous, refusing to offer the physical coordination test was not inappropriate because the decision to do so was justified. The reality is that there was at least a reasonable perception that defendant was not sufficiently fluent in English. As such, English instructions, or improperly translated ones, could have jeopardized the reliability of the test’s results.
In short, an officer’s decision not to offer a physical coordination test to a defendant because of the officer’s perception that defendant did not sufficiently understand English did not *888 violate his equal protection rights (Aviles, 28 NY3d 497; People v Perez, 27 Misc 3d 880 [Sup Ct, Bronx County 2010, Benitez, J.]). Thus, the decision by the police in this case not to administer a physical coordination test was based upon the reasonable inference that defendant was not sufficiently fluent in English. And, it was made out of caution and in an attempt to avoid an inaccurate or unreliable result, not from an effort to discriminate based on defendant’s ethnicity. Accordingly, because the NYPD’s policy of refusing to administer physical coordination tests to non-English or non-fluent English-speaking persons withstands rational basis review, defendant’s equal protection claim must be rejected.
In any event, law enforcement has no duty to assist a defendant in gathering evidence or establishing a defense (People v Finnegan, 85 NY2d 53, 58 [1995]). A person suspected or charged with operating a motor vehicle while under the influence, then, has no standing to compel the administering of a physical coordination test, let alone the right to have an interpreter during a police stop or at the testing facility. A physical coordination test is not a judicial, quasi-judicial, or administrative proceeding. Rather, it is an investigative tool used to gather evidence. It is axiomatic, then, that there is no constitutional right to have an interpreter present (Aviles, 28 NY3d 497; Perez, 27 Misc 3d 880). Merely because the test may have provided defendant with favorable evidence in no way grants him the right to perform it. And, as previously noted, the fiscal and administrative burdens placed on law enforcement by supplying a foreign language interpreter at every stage of the arrest process outweigh whatever private interest may otherwise exist in taking a physical coordination test (Salazar, 112 AD3d at 9).[2]
*889 Accordingly, after review of defendant’s motion to dismiss, the People’s papers in opposition, and prior court proceedings, defendant’s motion to dismiss the information is denied in its entirety.

. Numbers in parentheses refer to the pages of the suppression hearing minutes dated November 22, 2017; names refer to the witness whose testimony is cited.

. Notwithstanding the absence of a right or duty to offer physical coordination tests, this court notes that in 2016, an estimated 8.5 million people resided in New York City, with 1.5 million in Bronx County (Current and Projected Populations, NY City Dept of City Planning, available at https://wwwl.nyc.gov/site/planning/data-maps/nyc-population/current-future-populations.page).
Moreover, in New York City, three million residents are foreign-born, more than 200 languages are spoken, and 50% of its residents speak a language other than English at home. It is the city with the largest Hispanic population in the United States; the second largest in the world (New York City Population; Population Facts, NY City Dept of City Planning, available at https://wwwl.nyc.gov/site/planning/data-maps/nyc-population/population-facts.page).
*889 Most poignantly, though, 54% of Bronx County residents are Hispanic (A Closer Look at the Largest Hispanic City: New York, Hispanic Research Inc., available at http://www.hispanicresearch.com/index.php/hispanic-market-data/bispanic-market-rofileanddemographics/112-a-closer-look-at-the-largest-hispanic-city-new-york). Although the number of exclusively Spanish-speaking or limited English-speaking residents is unknown, it is difficult to understand why the Police Department does not provide a Spanish language interpreter or the equivalent. Only one police precinct in Bronx County administers chemical breath analysis tests. A specially trained and certified highway officer responds within an hour of being summoned to that precinct to conduct the test. So, too, a specially trained and certified Spanish language interpreter could be called in to conduct coordination tests. Alternatively, the way a chemical breath test is administered to a Spanish-speaking person by a prerecorded videotape presentation, the physical coordination tests, likewise, could be administered. True, with the wide-range of languages spoken by New York City residents, to do so for all non-English speaking persons would be untenable. But, with the large number of Hispanic people residing in Bronx County, doing so would be prudent.