People v Rosado (2025 NY Slip Op 50238(U))

[*1]

People v Rosado

2025 NY Slip Op 50238(U)

Decided on February 20, 2025

Criminal Court Of The City Of New York, Bronx County

Gonzalez-Taylor, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 20, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Samuel Morales Rosado, Defendant.

Docket No. CR-014790-24BX

For the Defendant:
The Bronx Defenders
(by: Emma Caridad Pérez, Esq. and Bailey Jackson, Esq.)
For the People:
Darcel D. Clark, District Attorney, Bronx County
(by: ADA Gabriela Gonzalez)

Yadhira González-Taylor, J.

On June 15, 2024, defendant was arrested and charged with one count each of Vehicle and Traffic Law ("VTL") §§ 1192 (3) driving while intoxicated (common law) and 1192 (1) (driving while impaired), a misdemeanor and a violation, respectively. 
On November 20, 2024, Hon. E. Derron Bowen granted defendant's request for pre-trial hearings pursuant to Dunaway v New York, 442 US 200 (1979), Mapp v Ohio, 367 US 643 (1961), and VTL § 1194 (2) (c).[FN1]
On January 13, 2025, the Dunaway/Mapp/VTL § 1194 hearings were held. The People called one witness, Police Officer ("Officer") Michael Velazquez, whom the Court found to be a credible witness. The defense did not call any witnesses. For the reasons stated herein defendant's Dunaway/Mapp/VTL § 1194/Refusal motion is DENIED.
FINDINGS OF FACT
Officer Michael Velazquez
Officer Michael Velazquez, shield number 20892, has been employed by the NYPD and assigned to the 50th Precinct for eight years. Officer Velazquez has been the arresting officer in approximately 100 arrests and participated and/or assisted in approximately 50 arrests, approximately 25 of which involved intoxicated driving. While at the police academy, Officer Velazquez received some training for recognizing indicia of intoxication and he has observed [*2]someone consume alcohol in his personal capacity (see Tr. January 13, 2025 at 6:6-12). On June 15, 2024, at approximately 6:15 a.m., Officer Velazquez and his partner, Officer Danny Medina, were assigned to respond to 911 and 311 calls in Sector Boy, which includes Jacobus Place (see Tr. January 13, 2025 at 7:9-15). Officer Medina speaks both English and Spanish (see Tr. January 13, 2025 at 7:19). After receiving a 911 call concerning a vehicular accident, Officers Velazquez and Medina arrived at 18 Jacobus Place, a residential area located within the confines of the 50th Precinct, in a marked vehicle (see Tr. January 13, 2025 at 8:4, 10, 23-24). Upon his arrival, Officer Velazquez observed a double-parked vehicle and met with the 911 caller (see Tr. January 13, 2025 at 8:15-16, 9:1-2).
The 911 caller informed Officer Velazquez that defendant had backed into her vehicle, made a U-turn and attempted to park his vehicle, and when she attempted to speak with him, defendant was uncooperative (see Tr. January 13, 2025 at 9:1-6). Officer Velazquez observed defendant seated behind the wheel of a Jeep Rubicon whose engine was still running (see Tr. January 13, 2025 at 10:1-2, 19). After Officer Velazquez approached the vehicle, defendant repeatedly lowered and raised his window while speaking Spanish in response to the officer's request for identification (see Tr. January 13, 2025 at 11:2-5, 10-11). Defendant remained uncooperative when Officer Velazquez's supervisor, Sergeant DeJesus, who speaks English and Spanish, approached the vehicle (see Tr. January 13, 2025 at 11:13-19). Defendant's eyes were bloodshot and slightly watery, and Officer Velazquez observed that defendant's breath had a strong odor of alcohol and he "didn't seem like he knew where he was at" and defendant's "speech was not in order" (see Tr. January 13, 2025 at 11:22-24, 12:1, 14). Although Officer Velazquez repeatedly asked defendant to exit his vehicle, he did not (see Tr. January 13, 2025 at 12: 17-20). Additionally, Officer Velazquez could see a bottle of Don Julio alcohol on defendant's passenger seat, a photograph of which was introduced as the hearing (see Tr. January 13, 2025 at 16:14-17, 19:13-14, 20:1-2 People's Exhibit 2). Officer Velazquez arrested defendant because he believed defendant was driving while intoxicated (see Tr. January 13, 2025 at 20:17-18). 
The People introduced Officer Velazquez's Body Worn Camera ("BWC") recording of the interaction that took place between defendant and the police at the time and place of occurrence (People's Exhibit 1). The footage depicts Officers Velazquez and Medina speaking with the complainant who points out where defendant's vehicle was located and answers affirmatively when Officer Velazquez asks her if the other driver was still present. The complainant next informs the officers that defendant had been double-parked in front of her when he reversed into her vehicle, causing damage to her front bumper, pulled out of the spot and made a U-turn before driving onto the sidewalk and hitting another vehicle. The complainant identifies defendant's vehicle as "the black Jeep." When the officers approach defendant's vehicle, Officer Velazquez identifies himself and asks defendant if they could speak with him, but defendant does not immediately respond. Once defendant lowers his window, Officer Velazquez says that he was told about an accident and asks defendant if he is okay to which defendant shrugs and replies "what happened?" Defendant is uncommunicative while the officers ask if he speaks English or Spanish, and Officer Medina can be heard to communicate in Spanish with defendant. Defendant then appears puzzled and makes halting responses when repeatedly asked for information and identification. 
Both officers continue to ask defendant for his license and identification but even as Officer Medina communicates with defendant in Spanish, defendant does not comply with their [*3]directive to turn the vehicle off and then repeatedly starts to close his driver's side window without providing either a license or identification. Officer Medina speaks in Spanish and gestures as if holding a card but defendant, who shrugs, gestures with his hands and talks haltingly, does not comply and shuts his window. After Officer Velazquez's supervisor arrives and talks to defendant in Spanish, defendant stares blankly at him but refuses to exit the vehicle. Officer Velazquez then reaches into the window to open the car door. The officers initially attempt to assist defendant to step out of the Jeep but when defendant resists, they pull him out of the car and to the ground where he is cuffed and placed under arrest, approximately four minutes from when the officers first approached. 
After defendant is raised to his feet and stood against the Jeep, the officers obtain his driver's license, and he responds belligerently but affirmatively to his last name and repeatedly resists getting into the patrol car. Officers Velazquez and Nieves then transport defendant to the 45th Precinct. Officer Velazquez continued to smell alcohol coming from defendant's breath and during the transport defendant appeared slumped over in the back seat of the patrol car, sometimes sleeping. Officer Velazquez arrested defendant because he believed defendant was driving while intoxicated (see Tr. January 13, 2025 at 20:17-18). 
The People next introduced the video of the interaction with defendant in the IDTU room at the 45th Precinct (People's Exhibit 3). Officer Velazquez was present while Highway Officer Echandy read defendant his rights in both English and Spanish regarding the chemical test analysis (see Tr. January 13, 2025 at 21:18-23). Officer Velazquez only speaks English (see Tr. January 13, 2025 at 22:12). Defendant was uncooperative and his balance swaying, and he was twice warned of the consequences of refusing the breathalyzer to which he responded by shaking his head no- although Officer Velazquez did not recall if the warnings were issued in any other language (see Tr. January 13, 2025 at 23:2-3, 6, 13-20, 24:7, 10). Officer Velazquez testified on cross-examination that his police paperwork indicated that defendant had a faint smell of alcohol on his breath (see Tr. January 13, 2025 at 41:9).
DEFENDANT'S CONTENTIONS
Defendant avers that even if the Court finds that the complainant's statements to officers satisfied a level one inquiry under the DeBour analysis, Officer Velazquez went beyond that when he asked defendant if he had been drinking. Defendant maintains that the complainant's statements to the police that her vehicle had been front-ended by a black Jeep do not establish reasonable suspicion that a VTL infraction had been committed where the People proffered no evidence that the complainant provided a physical description of the other driver. It is further argued that when Officer Velazquez reached into defendant's window, opened the car door, threw him to the ground and handcuffed him, officers still lacked probable cause to believe that a vehicular crime had been committed.
Defendant also posits that the indicia of intoxication reported by Officer Velazquez, namely the odor of alcohol, out of order speech and swaying balance, could not have been observed at a level 2 encounter because defendant was still seated in his vehicle and because, by Officer Velazquez's own admission, he does not speak Spanish and could form no credible opinion of defendant's speech; defendant also argues that the accident itself is not an indication of intoxication.
Defendant contends that BWC video does not depict officers taking any photographs at [*4]the scene, and where Officer Velazquez is observed to reach into defendant's vehicle to open his car door, but the People failed to elicit testimony that the bottle of Tequila was in plain view, the lawfulness of the car search has not been established. Lastly, defendant avers that the prosecution failed to meet its burden concerning VTL § 1194 (2)(c), because the People proffered no translation of the Spanish-language IDTU video warnings imparted to him concerning the consequences of refusing the chemical breath test.[FN2]

THE PEOPLE'S CONTENTIONS
The People maintain that police had probable cause to arrest based upon several factors. Initially, they posit that the reasonableness of the officer's actions is premised upon a vehicular accident involving defendant and a complainant who pointed out defendant's black Jeep which was still only feet away with its engine running when the officers arrived. The People also contend that Officer Velazquez's observations of defendant's bloodshot and watery eyes and heavily scented alcoholic breath were made while he stood at defendant's driver's side window- where he also viewed a bottle of Tequila to the right of defendant on the passenger seat. The People aver that defendant's uncooperativeness in response to Officers Velazquez and Medina's requests to roll down his window and provide identification was also a factor that police relied upon to determine that defendant was driving while intoxicated.
Concerning defendant's Mapp challenge, the People assert that Officer Velazquez stood at defendant's driver's side window when he observed the alcohol bottle to defendant's right and that he had lawful access to the bottle because there was probable cause to believe that defendant had violated the VTL. As to the admissibility of defendant's refusal to take the chemical blood test, the People contend that Officer Velazquez credibly testified that defendant was issued Spanish-language IDTU warnings- corroborated by the IDTU video which depicted Highway Officer Echandy advising defendant that warnings would be played in both English and Spanish. 
CONCLUSIONS OF LAW
Dunaway/Mapp
The People have the burden of presenting sufficient evidence of reasonable cause to show the legality of police conduct at suppression hearings (see People v Baldwin, 25 NY2d 66 [1969]; People v Malinsky, 15 NY2d 86 [1965]). This burden is met when they present credible evidence and facts- not just conclusions or beliefs of their witnesses (see People v Berrios, 28 NY2d 361 [1971]). Moreover, the People must demonstrate that the circumstances surrounding the officer's observations provided the officer with the authority to act. Once the People meet [*5]their initial burden, the burden shifts to the defendant to demonstrate, by a preponderance of the evidence, the illegality of the police conduct in question (see Berrios supra). Illegally obtained evidence is inadmissible at trial (see Mapp v Ohio, 367 US 643 [1961]).
As a threshold matter, the determination of whether someone has driven or is driving while intoxicated is informed by whether it is "more probable than not that the defendant [was] actually impaired" and an arrest for driving while intoxicated is lawful if there is evidence that an officer has determined that there was reasonable cause to believe that the driver was intoxicated (see People v Vandover, 20 NY3d 235, 239 [2012]). However, it is well-settled that conduct which is equally compatible with guilt or innocence will not suffice to establish probable cause for the arrest (see People v Carrasquillo, 54 NY2d 248, 254 [1981]). 
In determining whether the People have established that police had probable cause to arrest a driver for operating a vehicle while intoxicated in violation of VTL § 1192, a court must consider whether the prosecution has proffered evidence of physical or mental impairment from alcohol which may manifest, for example, as slurred speech and unsteadiness, unexplained erratic driving, rambling, traffic violations indicative of impairment, or an accident consistent with losing control (see People v Cruz, 48 NY2d 419, 426 [1979]; see also People v Gullo, 51 Misc 3d 150[A], at *1 [App Term, 2d Dept 2016]; People v Hillman, 71 Misc 3d127[A], *2 [App Term, 2d Dept 2021]; People v Freeman, 37 Misc 3d 142[A], *2 [App Term, 2d Dept 2012]). 
Here, given the totality of circumstances, the People have provided sufficient evidence to establish that when defendant was arrested, Officer Velazquez had probable cause to believe that defendant had been operating a vehicle while intoxicated in violation of VTL § 1192. Initially, Officer Velazquez's BWC demonstrates that officers answered a 911 call concerning a vehicular accident and responded to the scene where the complainant described the accident and pointed out defendant's vehicle which was still present at the scene with its engine running, and she showed officers the damage caused to her car. Thus, the first level of DeBour was satisfied because the police had an objective, credible and articulable reason to request his license and registration (People v DeBour, 40 NY2d 210, 220 [1976]). 
Additionally, Officer Velazquez testified credibly that while standing at defendant's driver's side window, he observed defendant to have heavily scented alcoholic breath, bloodshot and watery eyes and a bottle of alcohol to his right on the passenger seat. Officer Velazquez's testimony concerning defendant's demeanor is corroborated by his BWC video which depicts defendant as disoriented, uncooperative and combative as officers, in English and Spanish, repeatedly request that he turn his engine off, keep his window rolled down and provide identification, to no avail. Defense counsel correctly notes that Officer Velazquez could not have observed defendant's swaying balance until he was removed from his vehicle. However, contrary to defense counsel's contention that the facts at bar could be equally compatible with guilt or innocence, the cumulative circumstances presented establish that "a reasonable person in the position of the officer could have concluded that the motorist had operated a vehicle under the influence" prior to his arrest (see People v Harster, 63 Misc 3d 1209[A], 2019 NY Slip Op. 50445[U], * 6 [Crim Ct, Bronx County 2019] citing People v Farrell, 89 AD2d 987, 988 [2d Dept 1989]).
The evidence adduced at the hearing was sufficient to establish probable cause to arrest defendant for violating VTL § 1192. Accordingly, defendant's Dunaway motion to suppress evidence is denied and, consequently, evidence observed to be in plain view of the investigating [*6]officer and recovered from defendant's vehicle was obtained incidental to a lawful arrest. Defendant's Mapp motion to suppress is also denied.
VTL § 1194 Refusal
Vehicle and Traffic Law § 1194 (2) (f) provides, in pertinent part, that evidence of defendant's refusal to take a chemical breathalyzer test is admissible where the record demonstrates that "the person was given sufficient warning, in clear and unequivocal language" (see VTL § 1194 [2] [f] [emphasis added]). Courts have held that "a determination of whether the refusal warnings were in clear and unequivocal language must be based on an objective standard independent of whether the defendant actually understood them" (compare, People v Burnet, 882 NYS2d 835, 842 [Sup Court, Bronx County 2009] [internal citations and quotations omitted], with People v Niedzwiecki, 487 NYS2d 694, 696 [Crim Ct, Queens County 1985]["(H)e must reach a threshold point of understanding the choice presented to him, so he may at least be able to make a decision as to the course of conduct he will take"] [emphasis added]).
Defendant argues that the Court cannot determine the "clear and unequivocal" standard because the prosecution did not proffer a translation of the Spanish-language IDTU video. In People v Martinez, this Court granted a motion to suppress the chemical breath result because the Court had no basis to determine the voluntariness of defendant's consent without a translation which we found to implicate the defendant's due process (see Martinez, 84 Misc 3d 1260[A], 2025 NY Slip Op 50015[U], * 2 [Crim Ct, Bronx County 2025] ["If law enforcement officials were required to employ physical force to obtain the blood sample in those circumstances, the test results would be the product of coercion and would no longer satisfy the demands of due process" citing People v Atkins, 85 NY2d 1007, 1010-1012 [1995, Simons, J, dissenting]; see also People v Medel-Dominquez, 58 Misc 3d 130[A], 2017 NY Slip Op 51747[U], *1 [App Term, 1st Dept]). The holding in Martinez was predicated on the belief that the search of defendant by means of his breathalyzer implicated a fundamental issue of notice which required the People to proffer a translation of the foreign language IDTU video to enable the Court to make an evidentiary finding concerning the voluntariness of his consent to the search (see Martinez, supra at 2025 NY Slip Op 50015[U], *2).
However, unlike defendant Martinez, the defendant at bar was not subjected to a search (and seizure), and it has been recognized that "there is no constitutional, fundamental or other right to refuse to submit to a chemical test" (see Burnet supra at 843 [internal citations omitted]; see also People v Shaw, 534 NYS2d 929 [1998] ["The right is entirely statutory and, by its terms, may be waived without an attorney's assistance"]). Accordingly, where defendant has no right to refuse a chemical test, this Court concurs with the Burnet holding that no constitutional or fundamental right to an interpreter for the administration of the foreign language IDTU video attaches (see Burnet supra at 844).[FN3]

Thus, the Court believes it must be axiomatic that the lack of an English language translation raises no fundamental due process issue and no burden on the prosecution to [*7]demonstrate what was imparted to defendant by the foreign language IDTU video. The defendant's motion to suppress evidence of his purported refusal is denied. CONCLUSION
Based upon the foregoing, defendant's Dunaway/Mapp/ VTL § 1194/Refusal motion motion to suppress is DENIED. Additionally, defendant's Sandoval/Molineux motion to suppress is deferred to the trial court.
This constitutes the decision and order of the Court.
Dated: February 20, 2025
Bronx, New York
Hon. Yadhira González-Taylor, J.C.C.

Footnotes

Footnote 1:Defendant also moved for an order of preclusion pursuant to People v Molineux, 168 NY 264 (1901) and People v Sandoval, 34 NY2d 371 (1974).

Footnote 2:On January 14, 2025, the People made an application to reopen the omnibus hearing to permit them to introduce a translation of the Spanish-language video warnings played to defendant in the IDTU room following his arrest. Defendant opposed the application which he claimed was instigated to counter testimony elicited by his counsel during cross-examination of Officer Velazquez and to address questioning by the Court. The Court held that the People had a full opportunity to present their case before the close of the hearing and, thus, the failure to provide a translation of the Spanish-language IDTU video was not an oversight. The motion was denied.

Footnote 3:It should be noted that the record before the Burnet court included a translated transcript of the Spanish language warnings imparted to the defendant (see Burnet at 841).